UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SERENA STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV1048SNL |
| ) | |
| KEEFE COMMISSARY ) | |
| NETWORK, L.L.C., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

*Pro se* plaintiff has filed this employment discrimination action alleging that defendant violated the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§2000e *et. seq.*; the Missouri Human Rights Act (MHRA), §§213.010 *et. seq.*; and 42 U.S.C. §1981 on the basis of race and gender in terminating her employment. She also alleges that defendant discriminated against her by subjecting her to a racially hostile work environment in violation of Title VII, as well as retaliated against her in violation of §1981. This matter is before the Court on the defendant's motion for summary judgment (#20), filed March 23, 2007. Responsive pleadings have now all been filed. This cause of action is currently set for a non-jury trial on the Court's docket of July 23, 2007.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden

is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), *citing* Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems,

2

Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

The facts in this case are largely undisputed.[1] On or about November 24, 2003 plaintiff was hired by defendant Keefe Commissary Network (KCN) for the position of "Help Desk, Tier 1" which was primarily responsible for providing telephone support to external customers who call in for software or desktop support and trouble-shooting.[2]

---

[1]As will be addressed later, plaintiff failed to properly controvert any portion of the defendant's statement of uncontroverted material facts.

[2]The Court's recitation of the undisputed facts in this case are largely extracted from the exhibits filed by the defendant in support of the instant motion: Exhibit A - plaintiff's hiring letter, dated November 18, 2003; Exhibit B- portions of plaintiff's deposition; Exhibit D- Affidavit of Timothy P. McAteer; Exhibit E - Affidavit of John Puricelli; Exhibit F - Affidavit of Jack Donnelly; Exhibit G - "Immediate Correction Notice" re plaintiff, dated February 25, 2004; Exhibit H - interoffice e-mail sent by plaintiff to Rick Finkelstein and Jeff Fitter, dated February 26, 2004; Exhibit J - plaintiff's administrative charge of discrimination, dated October 7, 2004; Exhibit K - plaintiff's administrative charge of discrimination, dated April 27, 2005; Exhibit J - plaintiff's administrative charge of discrimination, dated September 12, 2005. Defendant has also offered two (2) other exhibits in support of its summary judgment motion: Exhibit C - an unidentified office memo; and Exhibit I - an invoice of food items from Sportservice Corp.,

In December 2003 plaintiff claims to have overheard an unidentified fellow employee tell a racially offensive joke; however, the joke was not directed to her. Plaintiff's Deposition, pgs. 83-84. In March 2004, plaintiff claims to have heard a supervisor Trish Boucher allegedly comment that she (Ms. Boucher) did not want to go on a work trip to Florida because there were "too many spics in Florida". Again, this comment was not directed to plaintiff. Plaintiff's Deposition, pg. 78. Other than these two (2) allegedly racially offensive verbal acts, plaintiff did not recall any other racially insensitive comments while employed by defendant. Plaintiff's Deposition, pgs. 85-86.

In May 2004, plaintiff applied for a position as a PC Support Technician with Centric Group, a separate but related company of which defendant is a subsidiary. She was interviewed for this position by Centric manager Rich Wall in early June 2004. Mr. Wall is not a management employee of defendant. During the interview, Wall told plaintiff that he thought she was overqualified for the position and inquired as to why she wanted to change jobs. He also asked her about the attendance issues at KCN resulting in the Immediate Correction Notice. Plaintiff's Deposition, pgs. 92-93. Plaintiff stated that she felt she had been "singled out" concerning the tardiness issue. Plaintiff's Deposition, pg. 98. She further "conveyed" to Wall that she wanted to change jobs because she felt the environment at KCN was discriminatory; however, she didn't make any specific complaints or inform Wall of any specific incidents. Plaintiff's Deposition, pgs. 98-99.[3]

Wall conveyed plaintiff's comments to KCN Manager Jeff Fitter. On or about June 9, 2004, Fitter and KCN Human Resources Representative Trent Unterreiner met with plaintiff to discuss her meeting with Wall and any concerns she had regarding the work environment at KCN. Plaintiff "downplayed" her comments to Wall, and essentially declined to discuss them or give

---

Deluxe Suites, Busch Stadium to Enterprise Rent-A-Car, Attn: Ms. Rosemary Joseph, undated. Neither of these exhibits have any indicia of authentication: Exhibit C fails to identify who wrote the memo or when it was written/typed; and Exhibit I is not dated nor is it addressed to either party in this lawsuit. There is no corroborating affidavit as to the authenticity of these two documents. Neither of these exhibits can be considered admissible evidence and therefore, will not be considered by the Court.

[3]Ultimately, plaintiff was not chosen by Wall for the position at Centric Group.

4

Fitter and Unterreiner any specifics about issues, complaints, or concerns. Plaintiff's Deposition, pgs. 105-08. Despite plaintiff's vagueness regarding alleged discriminatory practices at KCN, Fitter and Unterreiner repeatedly impressed upon plaintiff that discrimination was unacceptable at KCN and that, if she had any complaints or concerns, she could come to them. Plaintiff's Deposition, pgs. 107, 110.

On June 22, 2004 KCN hosted a social function in the Home Plate deluxe suite at Busch Stadium during a Cardinals baseball game. Approximately twenty-one (21) KCN employees attended, including the plaintiff. Plaintiff's Deposition, pgs. 112-14, 117; Defendant's Exhibit D - Affidavit of Timothy P. McAteer. McAteer, Vice-President of Operation for KCN, was the highest ranking management personnel in attendance at this function and, accordingly, was the KCN official "in charge" of the function. Plaintiff's Deposition, pgs. 121-22; McAteer Affidavit.

Plaintiff was not in McAteer's "chain of command". He had never met or talked to plaintiff prior to this event. He was not aware of any comments plaintiff may have made about KCN to Rich Wall. McAteer Affidavit. Sometime during this social function, plaintiff ordered more food to be brought up to the suite. Plaintiff's Deposition, pgs. 130-31. Plaintiff claims that she received permission from McAteer to place the food order. Plaintiff's Deposition, pgs. 128-29, 144. McAteer claims that he never spoke with plaintiff during the function and adamantly denies giving plaintiff permission to order more food. Plaintiff's Deposition, pg. 146; McAteer Affidavit.

McAteer became aware that additional food had been ordered from Christa Ermold, a KCN employee also attending the function. He was told that plaintiff may have ordered it because she was observed using the phone in the suite. Since there was still food remaining from the original order, he told the wait staff not to bring any more food. McAteer Affidavit. He decided not to raise the issue at the time during the festivities, but rather address the next day. McAteer Affidavit.

The following day, on June 23, 2004, McAteer informed John Puricelli, Vice-President/Controller of KCN of this incident involving the ordering of additional food. McAteer went to Puricelli because he believed the matter was within Puricelli's scope of responsibility and

5

plaintiff was in Puricelli's chain of command. McAteer Affidavit; Defendant's Exhibit E - Affidavit of John Puricelli. Puricelli conferred with Unterreiner as to the proper manner by which to handle the matter. Unterreiner suggested that, if plaintiff had ordered additional food without management permission, it would be appropriate to give her an Immediate Correction Notice, instructing her not to spend company funds again without authorization. Puricelli Affidavit.

Later that day, Puricelli met with McAteer and the plaintiff to discuss what had occurred in the stadium suite. Puricelli expected plaintiff to acknowledge ordering the food without permission, and that he would authorize an Immediate Correction Notice instructing her not to spend company funds again with proper authorization. Puricelli Affidavit. Instead, plaintiff claimed that McAteer had given her permission to order the additional food. Plaintiff's Deposition, pg. 144; McAteer Affidavit; Puricelli Affidavit. McAteer vehemently denied ever giving plaintiff permission to order additional food; in fact, he had never even discussed the subject with her. McAteer Affidavit.

During this meeting, plaintiff identified two (2) KCN employees who she believed would support her claim that McAteer had given her permission to order additional food: Cassandra Rochester and Shawn Lewis. Plaintiff's Deposition, pgs. 154-55; Puricelli Affidavit. Puricelli told plaintiff he would look further into this matter. Plaintiff realized that the matter had now become focused on who, she or McAteer, was telling the truth about the incident. Plaintiff's Deposition, pgs. 157-58.

Puricelli interviewed the two (2) employees/witnesses plaintiff identified and neither one supported plaintiff's claim that she had asked McAteer and received permission from McAteer to order additional food. Puricelli Affidavit. Puricelli went to KCN Vice-President/General Manager Jack Donnelly to discuss the matter. Puricelli explained the situation and his belief that the matter was not so much about ordering additional food, but rather about dishonesty. Puricelli Affidavit; Defendant's Exhibit F - Affidavit of Jack Donnelly.

On Monday, June 28, 2004 Donnelly met with the plaintiff to discuss the incident of June 22nd and to provide plaintiff with the opportunity to tell him what had occurred in the stadium suite. He explained to her his main concern was not with ordering food, but with the potential

issue of dishonesty. Plaintiff's Deposition, pg. 171; Donnelly Affidavit. Donnelly told plaintiff that neither Cassandra Rochester nor Shawn Lewis was able to support her claim that she had gotten permission from McAteer to order the additional food. Plaintiff still insisted that she had gotten such permission. Plaintiff's Deposition, pg. 172; Donnelly Affidavit.

Donnelly was faced with a classic "he said, she said" conflict as to the issue of permission. McAteer was a long-term employee of over twelve (12) years, and an officer of KCN. Donnelly had worked with McAteer for several years and had always found him to be honest and never had any reason to question his honesty. Donnelly Affidavit. Donnelly knew of no reason as to why McAteer would deny giving plaintiff permission to order more food, if he had indeed done so. Donnelly Affidavit.

Plaintiff was a short-term employee, having been with KCN only seven (7) months, with whom Donnelly had no prior dealings with and thus, had no "track record" upon which to adjudge her honesty. The witnesses that plaintiff had claimed would support her version of the incident had in fact failed to do so. Ultimately, Donnelly believed that McAteer was telling the truth and plaintiff was not and, thus, had ordered the additional food without permission. Donnelly believed that ordering the additional food without permission was a mistake but not a dischargable offense; however, he felt that plaintiff's lying about receiving permission had made matters worse, and that she should be discharged for dishonesty. Donnelly Affidavit.

On June 29, 2004 Donnelly informed plaintiff that he was terminating her employment with KCN for dishonesty. Plaintiff's Deposition, pg. 182; Donnelly Affidavit. At the time he made this decision, Donnelly was unaware of any allegations of alleged misuse of a company credit card by a KCN employee named Shayne Bean. Donnelly Affidavit.

Local Rule 4.01(E) states:

> A memorandum in support of a motion for summary judgment
> shall have attached a statement of uncontroverted material facts,
> set forth in a separately numbered paragraph for each fact, indicating
> whether each fact is established by the record, and, if so, the
> appropriate citations. Every memorandum in opposition shall

7

include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Defendant filed a proper Statement of Uncontroverted Material Facts with its summary judgment motion. Plaintiff has failed to file any pleading with her response which specifically disputes any of the material facts listed by the defendant. Thus, the Court finds that all matters set forth in the defendant's Statement of Uncontroverted Material Facts are deemed admitted for purposes of the instant summary judgment motion. *See,* Ruby v. Springfield R-12 Public School District, 76 F.3d. 909, 911 n.6 (8th Cir. 1996).

Furthermore, plaintiff's response consists largely of unsupported allegations, suppositions, and speculations. Her "evidence" appears to be primarily the unauthenticated investigative record of the Missouri Commission on Human Rights; several unauthenticated and unidentified documents appearing to be in connection with her pursuit of unemployment benefits; and copies of media press releases and news articles regarding Centric Group and KCN. None of these unmarked "exhibits" are admissible; and in fact, are completely irrelevant and immaterial to the issue of sex discrimination, race discrimination, and/or retaliation.

The Court has reviewed the legal memorandum, affidavits and exhibits submitted by the defendant in support of its motion for summary judgment. The defendant has met its initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467 (1962). Once the defendant has met its burden, the burden shifts to the plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those]

issue[s]." City of Mt. Pleasant v. Associated Electric Coop., 838 F.2d. 268, 274 (8th Cir. 1988). Since the plaintiff has failed to properly challenge the defendant's statement of uncontroverted facts, the Court accepts the defendant's account of said facts and now will apply the relevant law.

Plaintiff contends that she was terminated due to her gender and race. She contends that another similarly-situated white male employee, Shayne Bean, received favorable treatment.[4] She further believes that she was terminated in retaliation for complaining to Rich Wall about discrimination at KCN. Finally, plaintiff contends that she was subjected to a racially hostile work environment. Defendant contends that plaintiff's claims must fail because 1) she has failed to make a *prima facie* case of race and sex discrimination as to her termination because she cannot show that her termination took place in circumstances giving rise to an inference of discrimination; i.e., that any other white male employee was similarly-situated and received favorable treatment; 2) she has failed to show that the defendant's proffered reason for terminating her employment (dishonesty) was a pretext for discrimination; 3) she has failed to exhaust her administrative remedies as to her racially hostile work environment claim; and 4) she has failed to make a *prima facie* case of retaliation under §1981.

**Sex and Race Discrimination re Termination of Employment**

A plaintiff in a Title VII race or sex discrimination case can proceed in one of two ways. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. 200 (8th Cir. 1993). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that race was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by Price-Waterhouse v. Hopkins, 490 U.S. 228 (1989), come into play. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d. at 201 n.1; Beshears v. Asbill, 930 F.2d. 1348, 1353 (8th Cir. 1991). In the absence of such evidence, the guidelines set forth in McDonnell-Douglas v. Green, 411 U.S. 792 (1973) are applicable. Stacks v. Southwestern Bell Yellow Pages, 966 F.2d. at 202; Johnson v. Minnesota Historical Society,

---
[4]Although she makes a vague reference to other white males, Bean is the only white male employee she identifies.

9

931 F.2d. 1239, 1242-43 (8th Cir. 1991); Halsell v. Kimberly-Clark, 683 F.2d. 285, 289 (8th Cir. 1982), *citing*, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), *cert. den.*, 459 U.S. 1205 (1983). Since there is no direct evidence or specific circumstantial evidence of race or sex discrimination, the Court will analyze plaintiff's discrimination claims under the McDonnell Douglas standard.[5]

McDonnell Douglas, *supra.*, established a three-part analysis for Title VII disparate treatment cases. Under McDonnell Douglas, a Title VII plaintiff must first establish a *prima facie* case of intentional discrimination by a preponderance of the evidence. If the plaintiff successfully establishes a *prima facie* case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reason(s) for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. At all times the plaintiff employee possesses the ultimate burden of proving to the Court that s/he was the victim of intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Ghane v. West, 148 F.3d. 979, 981 (8th Cir. 1998); McCullough v. Real Foods, 140 F.3d. 1123, 1126-27 (8th Cir. 1998); Rose-Maston v. NME Hospitals, 133 F.3d. 1104, 1107-08 (8th Cir. 1998); Rothmeier v. Investment Advisors, 85 F.3d. 1328, 1332 (8th Cir. 1996); Ruby v. Springfield R-12 Public School Dist., 76 F.3d. 909, 911-12 (8th Cir. 1996); Favors v. Fisher, 13 F.3d. 1235, 1237-38 (8th Cir. 1994); *see also*, Carter v. St. Louis University, 167 F.3d. 398, 401 (8th Cir. 1999).

In order to establish a *prima facie* case of disparate treatment (race and/or sex), a plaintiff must show that: 1) s/he is a member of a protected class; 2) s/he was meeting the legitimate expectations as to his or her duties; 3) s/he suffered an adverse employment action (in this case, termination of employment); and 4) circumstances existed giving rise to an inference of discrimination as similarly situated employees, who were not members of the protected class,

---

[5]Plaintiff's Title VII and MHRA claims are both analyzed under the McDonnell Douglas burden-shifting framework. Herrero v. St. Louis University Hospital, 109 F.3d. 481, 484 (8th Cir. 1997).

were treated more favorably. *See*, <u>Gilooly v. Missouri Dept. of Health and Senior Services, et. al.</u>, 421 F.3d. 734, 738-39 (8th Cir. 2005)(sex discrimination); <u>Putman v. Unity Health System</u>, 348 F.3d. 732, 735-36 (8th Cir. 2003)(race discrimination).

Plaintiff's "evidence" of discriminatory termination of her employment is her allegation that a white male employee, Shayne Bean, used a company credit card to make excessive personal purchases but had not been fired. After careful review of the summary judgment record, the Court finds that plaintiff has failed to establish Element 4 of her *prima facie* case of disparate treatment. Plaintiff's argument that a similarly-situated white male employee was treated more favorably than she fails because plaintiff has failed to set forth any affirmative evidence that this employee was similarly-situated to her.

At the *prima facie* stage, the plaintiff's burden in showing that she and other "similarly-situated" white male employees were treated differently is not onerous. The threshold test at the *prima facie* stage is "low". <u>Rogers v. U.S. Bank, N.A.</u>, 417 F.3d. 845, 852-53 (8th Cir. 2005); <u>Wheeler v. Aventis Pharmaceuticals</u>, 360 F.3d. 853, 857 (8th Cir. 2004). To meet the fourth element in a disparate treatment claim, plaintiff must show that another employee outside the protected class was allegedly treated more favorably and was "similarly situated in all relevant aspects." <u>Gilooly</u>, at 739 *quoting* <u>Pope v. ESA Services</u>, 406 F.3d. 1001, 1009 (8th cir. 2005). Under the "low-threshold" standard, Stephens must show that she and the one identified individual (Shayne Bean) were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." <u>Rogers</u>, at 852 *quoting* <u>Wheeler</u>, at 857.

In this case, plaintiff has set forth no affirmative evidence that Shayne Bean was similarly situated to her and treated more favorably. Plaintiff's deposition testimony is that she "believes" that Shayne Bean was similarly situated because another KCN employee, Cassandra Rochester, allegedly told her that Bean had "used his corporate credit card for personal purchases in excess of what normally would have been I guess a verbally agreed upon limit for personal use," supposedly for a stereo and other equipment. Plaintiff's Deposition, pgs. 188-89. Plaintiff further testified that she "had been told" that Bean was confronted by Puricelli and had his credit card taken away, and that Bean was to reimburse the company for the personal purchases. Plaintiff's

11

Deposition, pg. 193.  Plaintiff has no personal information or knowledge as to the events surrounding Bean's alleged misuse of a corporate credit card; especially whether he lied about its misuse.  Plaintiff's Deposition, pg. 193.  Plaintiff has not provided any documentation regarding this incident with Shayne Bean.  Plaintiff has provided nothing more than a third-hand account of what may have transpired regarding the alleged misuse of a corporate credit card by Shayne Bean.  There is no affirmative evidence before the Court that plaintiff and Bean engaged in the same conduct; i.e., misuse of corporate funds and lying about it.  Upon review of the plaintiff's deposition testimony, it is apparent that all she has are vague unsubstantiated allegations regarding Bean.  She offers nothing more than her opinion that he was not treated similarly.  Plaintiff must substantiate her allegations with more than "speculation, conjecture, or fantasy" in order to survive summary judgment.  Marquez v. Bridgestone/Firestone, Inc., 353 F.3d. 1037, 1038 (8th Cir. 2004) *citing* Putnam, at 733-34.  Plaintiff has not met her burden of demonstrating that Shayne Bean (or any other identified white male) engaged in the same conduct, was subject to the same standards of behavior, and was treated more favorably.  The Court finds that plaintiff has not established her *prima facie* case of disparate treatment because she failed to carry her burden of demonstrating that similarly situated white male employees of defendant were treated more favorably.

Even *assuming arguendo* that plaintiff had established her *prima facie* case of disparate treatment, the defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff's employment; i.e., her dishonesty regarding the ordering of additional food without permission.[6]

Since the defendant has articulated a legitimate, non-discriminatory reason for plaintiff's discharge from employment, plaintiff now has the burden to show that the proffered explanation is a mere pretext for race discrimination.  Plaintiff may prove pretext and "avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's

---

[6] Although the plaintiff denies lying about whether she had gotten permission from McAteer to order the additional food, the validity of the allegation is not before the Court at this stage of the McDonnell Douglas burden-shifting framework.  All that is necessary is for the defendant to offer a "legitimate, non-discriminatory" reason for its employment decision.

proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision." Forrest v. Kraft Foods, Inc., 285 F.3d. 688, 691 (8th Cir. 2002) *quoting* Rothmeier v. Investment Advisers, Inc., 85 F.3d. 1328, 1336-37 (8th Cir. 1996). Plaintiff's only "evidence" of pretext is her assertion that a similarly situated white male employee was treated more favorably, and that she did not lie about getting permission from McAteer to order the additional food at the ballgame. For the reasons noted before, and in light of the fact that plaintiff does offer any affirmative evidence outside the speculative assertions contained in her deposition and responsive pleading, the Court finds that plaintiff has not met the "rigorous" burden of demonstrating pretext via a showing that similarly situated white employees were treated more favorably. Cherry v. Ritenour School District, 361 F.3d. 474, 479 (8th Cir. 2004); Saulsberry v. St. Mary's University of Minnesota, 318 F.3d. 862, 866-67 (8th Cir. 2003); *see also*, Griffin v. Super Valu, 218 F.3d. 869, 872 (8th Cir. 2000)(lack of evidence in the record to corroborate general deposition testimony regarding issue of more favorable treatment for white employees fails to establish pretext) *citing* Davenport v. Riverview Gardens School Dist., 30 F.3d. 940, 945 (8th Cir. 1994)(general and unelaborated deposition testimony that similarly situated white employees were treated more favorably did not create genuine issue of fact on question of pretext).

As for plaintiff's denial that she lied about the food incident, this has no bearing on the Court's determination as to whether plaintiff has presented sufficient evidence of pretext for race discrimination to survive summary judgment. The Court's review is limited to determining whether plaintiff has offered sufficient evidence from which a reasonable juror could conclude that the articulated reasons for plaintiff's discharge was a pretext for race discrimination. The courts are not to sit as a "super-personnel department" and it is not unlawful for an employer to make employment decisions on erroneous information. Allen v. City of Pocohantas, 340 F.3d. 551, 558 n.6 (8th Cir. 2003); Evers v. Alliant Techsystems, Inc., 241 F.3d. 948, 957 (8th Cir. 2001); *see*, Hill v. St. Louis University, 923 F.Supp. 1199, 1212-13 (E.D.Mo. 1996) *aff'd* 123 F.3d. 1114 (8th Cir. 1997). Plaintiff has presented no evidence that Donnelly had any reason to disbelieve McAteer instead of plaintiff. McAteer was a long-term employee with whom Donnelly had an

extensive positive work history; while plaintiff was an employee of only a few months that Donnelly had no prior work experience to adjudge. Plaintiff had named two (2) witnesses for corroboration; yet, these witnesses did not support her version of the events to that night. Donnelly was simply presented with an issue of credibility and made a business decision based upon his best instincts. This Court is not going to second-guess Donnelly's decision without a scintilla of evidence to show that it was based on race.

Thus, even if this Court were to conclude that plaintiff had established a *prima facie* case of race discrimination, plaintiff has failed to present any evidence that supports an inference that the District's articulated reasons for terminating his employment were pretextual.[7] Furthermore, plaintiff has failed to present any evidence from which a reasonable jury could find that he was terminated under circumstances showing that race played a motivating role in the decision to terminate his employment.

### Racially Hostile Work Environment

Plaintiff contends that she was subject to a racially hostile work environment based upon two (2) comments, not directed to her, made by co-workers. In her three (3) administrative charges, plaintiff never included a claim for racial harassment or included any allegations which would support a claim of racial harassment, She never included in any one of these administrative charges any information regarding the two (2) comments she relied upon at her deposition. Defendant's Exhibits J, K, and L. Her claims of racially hostile work environment are not reasonably related to her claims of discriminatory discharge and/or retaliation. *See*, Cottrill v. MFA, Inc., 443 F.3d. 629, 634-35 (8th Cir. 2006)(claims for disparate treatment did not arise from nor were reasonably related to the allegations of a hostile work environment); Tart v. Hill

---

[7]Plaintiff's offered "reasons" as to why defendant's decision to terminate her employment is a pretext for race discrimination barely merits being addressed. She speculates that a personal friendship between McAteer and Donnelly was the basis for Donnelly believing McAteer; even if they were friends, it does not show race discrimination. She postulates that Donnelly had made an oral promise of continued employment on June 28th in order to keep her from filing some type of complaint against McAteer; however, plaintiff was an "at-will" employee and subject to dismissal for any reason, including dishonesty. She has no evidence that any "oral contract" existed; and moreover, still no evidence of race discrimination in the decision-making process. Finally, she simply believes that it had to be race discrimination because she is black and McAteer is white. Such an assertion is not evidence of race discrimination.

Behan Lumber Co., 31 F.3d. 668, 671 (8th Cir. 1984)(claim of racial harassment is not reasonably related to racially discriminatory discharge). For a claim of hostile work environment "[t]o be properly exhausted [it] must be separately raised in the administrative charge, because it is not reasonably related to a claim of discrete act of discrimination, such as [a termination]." Gipson v. KAS Snacktime Co., 83 F.3d. 225, 229 (8th Cir. 1996) *citing* Tart v. Hill Behan, at 671. Plaintiff's administrative charges allege no facts concerning any racially derogatory comments made by anyone associated with the defendant. She simply says that she was terminated from her employment because she is black and that another white male employee was not terminated for making personal purchases on a corporate credit card. Her last administrative charge simply states that her termination was in retaliation for complaining to Rich Wall about "racial slurs" but she completely fails to elaborate any further. Plaintiff's claim of racially hostile work environment is barred for failure to exhaust adminstrative remedies.

Even if plaintiff's claim of racially hostile work environment was not barred for failure to exhaust her administrative remedies, her claim still fails to meet the high threshold for actionable harassment. Among other things, plaintiff must show that the discriminatory conduct was so severe or pervasive that it altered the work conditions of the plaintiff's employment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Bainbridge v. Loffredo Gardens, Inc., 378 F.3d. 756, 759 (8th Cir. 2004). "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents." Bainbridge, at 759.

Plaintiff testified that she overheard only two (2) racially offensive comments in her approximately seven (7) months of employment: a racially insensitive joke by an unidentified co-worker and a racially insensitive remark by Ms. Boucher regarding the residents of Florida. Neither of these comments were directed to the plaintiff. These were two (2) sporadic comments not directed to plaintiff or even about plaintiff. No reasonable juror could find that this constitutes sufficient evidence that the "harassment" at KCN was so severe or pervasive that it altered the terms or conditions of her employment. *See*, Bainbridge, at 759-60.

### Retaliatory Discharge under §1981

15

In her complaint, plaintiff asserts that she was retaliatorily discharged because the termination of her employment occurred "within two weeks of making a verbal complaint of racial harassment" about her work environment at KCN. Plaintiff's Complaint, ¶13.

The same McDonnell Douglas analytical framework is applied to both a Title VII and a §1981 retaliation claim. Kim v. Nash Finch Co., 123 F.3d. 1046, 1060 (8th Cir. 1997). The elements of a §1981 retaliation claim are: 1) plaintiff engaged in a statutorily protected activity; 2) plaintiff suffered a subsequent adverse employment action; and 3) a causal connection exists between the two events. Bainbridge, at 760; Kim, at 1060. Defendant contends that plaintiff has failed to establish Elements 1 and 3 of her *prima facie* case of discriminatory retaliation.

It is undisputed that plaintiff made vague comments to Rich Wall while interviewing for a job outside of KCN. At the time, Rich Wall was not a member of the management personnel of defendant. Plaintiff was surprised that her comments to Wall had been reported to Fitter. Plaintiff's Deposition, pgs. 103-04. When given the opportunity to elaborate at her meeting with Fitter and Unterreiner, she chose not to discuss her comments to Wall or provide any specifics about issues or concerns she had with the work environment at KCN. Plaintiff's Deposition, pgs. 106-08. Under these circumstances, the Court finds that plaintiff has failed to provide sufficient evidence that she engaged in a statutorily protected activity. *See*, Pope v. ESA Services, Inc., 406 F.3d. 1001, 1010 (8th Cir. 2005).[8]

Furthermore, plaintiff cannot establish Element 3 of her *prima facie* case. The sole basis for her claim is the proximity in time between her comments to Wall in early June and her termination on June 29th.[9]

---

[8] In her responsive pleading, plaintiff claims that she engaged "in at least three incidents of documented protected activity" and that she made "further complaints of discrimination" in connection with the baseball game food incident. However, other than these unsubstantiated allegations, she provides no such "documentation" and no details as to these "complaints". Such bare allegations fail to set forth sufficient affirmative evidence to establish Element 1 of her *prima facie* case of retaliatory discharge.

[9] Plaintiff also now asserts that defendant challenged her receipt of unemployment compensation in retaliation for her "complaints of discrimination". This claim fails for the simple reason that defendant, as her employer, has the right under Missouri law to file such a challenge. §288.070 R.S.Mo. Plaintiff cannot establish a causal connection between her "complaints" and defendant exercising its legal rights.

To prove causation, a plaintiff must demonstrate that an employer's retaliatory motive played a part in the employment decision. Hughes v. Stottlemyre, 454 F.3d. 791, 797 (8th Cir. 2006). Evidence that gives rise to an inference of retaliatory motive is sufficient to prove a causal connection. Kipp v. Mo. Highway & Transp. Comm., 280 F.3d. 893, 897 (8th cir. 2002). Evidence of a temporal connection alone is usually not sufficient to prove a causal connection. Kiel v. Select Artificials, Inc., 169 F.3d. 1131, 1136 (8th Cir. 1999). "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." Green v. Franklin National Bank of Minneapolis, 459 F.3d. 903, 915 (8th Cir. 2006 *quoting* Peterson v. Scott County, 406 F.3d. 515, 524 (8th Cir. 2005).[10] Finally, evidence showing that the decision-maker was unaware of the protected activity at the time of the adverse employment action negates any possible causal connection. Robinson v. Potter, 453 F.3d. 990, 994 (8th Cir. 2006).

The decision to discharge plaintiff occurred within approximately one-month of her interview with Wall, and her meeting with Fitter and Unterreiner; thus, such a close proximity of timing would normally perhaps raise an inference of retaliatory motive. However, in this case, such an inference is negated by several factors. Firstly, her initial remarks were to someone outside her chain of command with defendant. Secondly, she effectively retracted her comments to Wall when she met with Fitter and Unterreiner. Thirdly, there is no evidence that McAteer was

---

[10] In Green, *supra.*, the Eighth Circuit Court of Appeals reviews the caselaw addressing the issue of whether timing alone can establish a *prima facie* retaliation claim. It notes that in Peterson, *supra.*, a two-week gap between termination and the protected activity was sufficient to establish causation in the *prima facie* case; however, the Court goes on to note that other cases have consistently held that termination shortly after protected activity, standing alone, is not enough to raise a genuine issue of material fact as to causal connection. Green, at 915. The Court cites to EEOC v. Kohler Co., 335 F.3d. 766, 774 (8th Cir. 2005)(one-month gap between protected activity and firing); Kiel, *supra.* (plaintiff engaged in a hostile outburst after being denied an accomodation to his disability; outburst "severed the causal connection") as cases showing that more than a temporal connection is required to present a genuine factual issue on retaliation. Finally, the Green Court adopts the holding in Kipp, *supra.* that "a mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge." Green, at 915 *quoting* Kipp, at 897. Ultimately, the Green Court held that ". . . timing alone is insufficient to show a pretextual motive rebutting a legitimate, non-discriminatory reason for an adverse employment action." Id., at 916.

17

aware of her comments to Wall when he challenged her version of events in the stadium suite. Finally, although Donnelly was made aware of her general comments to Wall, he was also aware that she declined to raise any specific concerns regarding her work environment at KCN. Donnelly Affidavit.

Other than the timing, there is no evidence to support plaintiff's contention that she was fired in retaliation for "complaining" to Wall. All plaintiff has is her general allegations, speculations, and opinion testimony. This is not sufficient to support a finding of a causal connection between her alleged protected activity and her termination. *See*, Palesch v. Missouri Commission on Human Rights, 233 F.3d. 560, 569-70 (8th Cir. 2000).

In light of the Court's above-referenced findings, the Court determines that there is no genuine issue of material fact as to the non-discriminatory termination of plaintiff's employment with defendant. The plaintiff has failed to set forth any affirmative evidence upon which any reasonable juror could find that defendant terminated her employment for discriminatory reasons. Viewing the record in the light most favorable to the plaintiff, said record demonstrates that plaintiff's employment was terminated for the reasonable belief that she had been dishonest about the circumstances regarding the food ordering incident.[11] Plaintiff has offered no affirmative evidence that defendant was not motivated by a good faith belief that plaintiff was dishonest. Even if defendant was wrong, proof that Donnelly had reached an unfounded conclusion about plaintiff's dishonesty is still insufficient to prove a claim of racial and/or sex discrimination. *See*, Johnson v. Ready Mixed Concrete Co., 424 F.3d. 806, 811 (8th Cir. 2005).
The Court, having found no material issues of fact in dispute, and determining that defendant is entitled to summary judgment as a matter of law, will grant the instant motion.

---

[11]Plaintiff submits the findings of the Labor and Industrial Relations Commission to prove that the reviewer of her claim for unemployment benefits found that her testimony was "credible"; i.e. that she had permission to order the additional food. Findings made in unemployment proceedings "shall not be used as evidence in any subsequent or separate action [not brought under Chapter 228]" in this Court or any Missouri court. §288.215 R.S.Mo.

18

Dated this __19th__ day of June, 2007.

　　　　　　　　　　　　　　　　_/s/ Stephen N. Limbaugh_
　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE